*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, | ) | |
| | ) | Supreme Court No. 16592 |
| Petitioner and | ) | Court of Appeals Nos. A-12662/12751 |
| Cross-Respondent, | ) | |
| | ) | Superior Court No. 4FA-14-01954 CR |
| v. | ) | |
| | ) | O P I N I O N |
| CONAR L. GROPPEL, | ) | |
| | ) | No. 7313 – November 2, 2018 |
| Respondent and | ) | |
| Cross-Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALASKA COURT SYSTEM, | ) | |
| | ) | |
| Respondent and | ) | |
| Cross-Respondent. | ) | |
| | ) | |

Certified Question from the Court of Appeals of the State of Alaska, on Petition for Review from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Kenneth M. Rosenstein and Patricia Haines, Assistant Attorneys General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Petitioner and Cross-Respondent. Brooke Berens, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, for Respondent and Cross-Petitioner. Thomas P. Amodio, Reeves Amodio LLC, Anchorage, for Respondent and Cross-Respondent. Kelly R. Taylor,

Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Amicus Curiae Alaska Public Defender Agency.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices, and Matthews, Senior Justice.[*] [Carney, Justice, not participating.]

STOWERS, Chief Justice.

# I. INTRODUCTION

When a criminal defendant asserts the defense of insanity or diminished capacity or the defendant's mental fitness otherwise is at issue, AS 12.47.070 requires the court to appoint two qualified psychiatrists or two psychologists certified by the American Board of Forensic Psychology to examine the defendant. This case presents the questions whom these experts serve, how they are to be chosen, and who must bear their costs. We answer that these are the court's experts, that Alaska Psychiatric Institute (API) must provide them if API employs experts with the qualifications set out by statute, and that if API does not employ such qualified experts, then the superior court must appoint qualified experts and the Alaska Court System must bear their costs.

# II. FACTS AND PROCEEDINGS

Conar L. Groppel is charged with first- and second-degree murder, manslaughter, first- and second-degree arson, first-degree criminal mischief, first-degree burglary, and evidence tampering. Groppel notified the superior court he might rely on the defense of diminished capacity, and pursuant to AS 12.47.070(a) the court was required to appoint at least two qualified psychiatrists or board-certified forensic

---

[*] Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

psychologists to examine him and report upon his mental condition.[1]  Later Groppel also moved for a competency and culpability examination.

Groppel was evaluated by Dr. Kristy Becker, a forensic psychologist at API.  Although the superior court found Dr. Becker was "substantively qualified to give an opinion in this case," it ruled she was not qualified under AS 12.47.070 because she was not certified by the American Board of Forensic Psychology.  The court explained it had conferred with API representatives and "confirmed that [API] ha[d] no psychiatrist qualified according to the statute to conduct the examination."  The court therefore announced it would appoint two statutorily qualified experts and stated, "It is the court's intention that each party will be entitled to [its] own expert, each party to bear [its] own expert costs and fees."

The State petitioned the court of appeals for review, arguing the Office of Public Advocacy (OPA) — which represented Groppel — should bear the costs of both experts.  Groppel cross-petitioned for review, arguing the Alaska Court System should pay the entire costs of both experts.  The State responded, adopting Groppel's argument as an alternative position.  The court of appeals then invited the Court System to file a

---

[1]     *See* AS 12.47.020(a) ("Evidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did or did not have a culpable mental state which is an element of the crime.  However, evidence of mental disease or defect that tends to negate a culpable mental state is not admissible unless the defendant, within 10 days of entering a plea, or at such later time as the court may for good cause permit, files a written notice of intent to rely on that defense."); AS 12.47.070(a) ("If a defendant has filed a notice of intention to rely on the affirmative defense of insanity under AS 12.47.010 or has filed notice under AS 12.47.020(a), or there is reason to doubt the defendant's fitness to proceed, or there is reason to believe that a mental disease or defect of the defendant will otherwise become an issue in the case, the court shall appoint at least two qualified psychiatrists or two forensic psychologists certified by the American Board of Forensic Psychology to examine and report upon the mental condition of the defendant.").

response; the Court System argued the superior court was correct to divide the costs between the State and OPA, but in the alternative OPA should cover the full costs of both experts.[2]

The court of appeals certified the question to this court, and we granted the certification. On January 24, 2018 we issued an order vacating the superior court's order and remanding with the following instructions:

> 1. The court shall appoint qualified API psychiatrists or psychologists to perform the required evaluations unless the court finds that no psychiatrists at API are qualified and no forensic psychologists at API are certified by the American Board of Forensic Psychology, or that there is another legitimate reason why API staff cannot perform the evaluations.

> 2. If the court finds that there are no qualified psychiatrists and no board-certified forensic psychologists at API, the court shall appoint at least two neutral expert witnesses from outside API. The court may solicit recommendations from the parties when deciding whom to appoint. But the experts shall report to the court and not to the parties, and the scope of the evaluations shall be controlled by the court. The Court System shall pay for these non-API experts pursuant to AS 12.47.070 and in accordance with Alaska Administrative Rule 8.[3]

We stated that an opinion explaining our order would be published at a later date. This is that opinion.

---

**2** The State's and the Court System's alternative positions became their primary positions at oral argument before us: the State argued the Court System should pay, and the Court System maintained OPA should pay.

**3** *State v. Groppel*, No. S-16592 (Alaska Supreme Court Order, Jan. 25, 2018).

## III.    STANDARD OF REVIEW

The interpretation of a statute is a question of law we review de novo.[4] "We construe statutes according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[5] We use "a sliding scale approach, under which 'the plainer the language of the statute, the more convincing contrary legislative history must be.' "[6]

## IV.    DISCUSSION

Alaska Statute 12.47.070 provides for psychiatric or psychological examination of a criminal defendant when the defendant has filed notice of his intent to rely on a defense of insanity or diminished capacity, when "there is reason to doubt the defendant's fitness to proceed," or when "there is reason to believe that a mental disease or defect of the defendant will otherwise become an issue in the case."[7] The statute directs the court to "appoint at least two qualified psychiatrists or two forensic psychologists certified by the American Board of Forensic Psychology to examine and report upon the mental condition of the defendant."[8] This opinion clarifies whom these experts serve, how they are to be selected, and who bears their expense.

### A.    Experts Appointed Under AS 12.47.070 Are The Court's Experts.

The superior court apparently viewed the two experts it sought to appoint as being the parties' experts. It stated, "It is the court's intention that each party will be

---

[4]    *State v. Korkow*, 314 P.3d 560, 562 (Alaska 2013).

[5]    *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1121 (Alaska 2017).

[6]    *Id.* at 1121-22 (quoting *Bartley v. State, Dep't of Admin., Teachers' Ret. Bd.*, 110 P.3d 1254, 1258 (Alaska 2005)).

[7]    AS 12.47.070(a).

[8]    *Id.*

entitled to [its] own expert, each party to bear [its] own expert cost and fees." The court was mistaken. Experts appointed under AS 12.47.070(a) serve as the court's expert witnesses.

In 1972 the Alaska Legislature codified the defenses of insanity and diminished capacity and provided for psychiatric examination of defendants raising those defenses.[9] The law directed the court to "appoint at least one qualified psychiatrist" or request API's superintendent "to designate at least one qualified psychiatrist . . . to examine and report upon the mental condition of the defendant" if there were reason to believe the defendant's mental condition would be at issue.[10] With court permission, a qualified expert retained by the defendant would "be permitted to witness and participate in the examination."[11] The statute required the examination report to be filed with the clerk of the court, who would then distribute copies to the parties.[12]

The Alaska Legislature has twice amended this statute: first in 1981 in an act primarily concerning involuntary commitment,[13] and again in 1982 to modify the defenses available to defendants claiming mental disease or defect.[14] In 1981 it added the phrase "or a forensic psychologist certified by the American Board of Forensic

---

[9]    *See* ch. 119, § 1, SLA 1972; *Schade v. State*, 512 P.2d 907, 911 (Alaska 1973).

[10]    Ch. 119, § 1, SLA 1972.

[11]    *Id.*

[12]    *Id.*

[13]    Ch. 84, § 2, SLA 1981.

[14]    Ch. 143, § 22, SLA 1982.

Psychology."[15] The 1982 bill increased the number of qualified experts from one to two, and removed the language referring to the superintendent of API.[16] Neither of these changes altered the character of these examiners as experts for the court.

### 1. The history of the 1982 amendments reveals legislative intent to provide non-partisan experts.

An early House Judiciary Committee draft of the 1982 bill revising the psychiatric examination law called for "at least three" experts,[17] and the final amendment required "at least two."[18] One legislator explained, "[G]etting the benefit of different opinions . . . [is] the real point here, not that they pick some guy who supposedly is super objective and scientifically accurate. It's not that. It's a subjective judgment."[19]

The House Judiciary Committee hearings also make clear the court-appointed experts are separate from prosecution or defense experts. A representative

---

[15]     Ch. 84, § 2, SLA 1981.

[16]     Ch. 143, § 22, SLA 1982. This law moved the provision from AS 12.45.087 to its current location at AS 12.47.070 and made other changes immaterial to our analysis. *Compare* ch. 119, § 1, SLA 1972, *with* ch. 143, § 22, SLA 1982.

[17]     H. Judiciary Comm., Bill Cook's Draft of Senate Bill (S.B.) 535, 12th Leg., 2d Sess., Alaska Leg. Microfiche Collection No. 1642.

[18]     H. Judiciary Comm., Second Work Draft for Insanity Defense Amendments to H. Comm. Substitute (H.C.S.) for Comm. Substitute (C.S.) for S.B. 535, 12th Leg., 2d Sess., Alaska Leg. Microfiche Collection No. 1642.

[19]     H. Judiciary Comm., Hearing on S.B. 535, 12th Leg., 2d Sess., May 20, 1982, audio recording at 1:18:57 – 1:19:15, http://www.akleg.gov/ftr/archives/1982/HJUD/B79R30-HJUD-28-820519-820524.mp3 [hereinafter Hearing Audio]; *see also* MODEL PENAL CODE § 4.05 cmt. 2 n.5 (AM. LAW INST. 1985) ("Given the divergent views among psychiatrists concerning mental disease, some authors have advocated deemphasizing the 'impartiality' of psychiatric testimony of court-appointed psychiatrists in favor of presenting the finder of fact with as much psychiatric information as possible.").

from the Department of Law testified that he opposed the increase in experts from one to two:

> We'll have two disinterested psychiatrists, assuming a disinterested psychiatrist can be found. If they're disinterested, one is likely to go one way; another is likely to go the other way. And then each party is going to bring in further psychiatrists. I think we're doubling the number of psychiatrists likely to appear in any given trial. Currently, someone from API is usually appointed by the court. If that psychiatrist says the person is insane, the State usually goes along with that. If that person — if that psychiatrist says the person is sane, the defense goes out and gets its own psychiatrist. So there are usually two psychiatrists testifying in any trial. Here we're going to have two court-appointed psychiatrists and then it's very likely that the parties are going to go out and get their own psychiatrists. . . . And we're likely to have four psychiatrists instead of two. I don't see any need for this.[20]

The members of the Committee disagreed, expressing the view that psychiatry "is not an exact science" and that "it is better to have more than one opinion."[21] In another representative's view, "the worst case situation . . . is that we might have four psychiatrists instead of two. So what?"[22] Moreover, at oral argument before us the Court System agreed that the experts were neutral experts for the court.

These legislators' openness to multiple psychiatric opinions is consistent with comments from the drafters of the Model Penal Code, upon which the original 1972 statute is based.

---

[20]    Hearing Audio, *supra* note 19, at 32:14-33:14.

[21]    *Id.* at 1:11:30-1:11:43.

[22]    *Id.* at 1:13:36-1:13:56.

**2.** **The Model Penal Code drafters' comments are persuasive authority supporting our interpretation.**

The principal goal of the 1972 law was to overhaul Alaska's legal standard for the insanity defense, which this court declined to do in *Pope v. State*.[23] Justice Connor filed a lengthy dissent on this issue, criticizing the "retrograde decision" formulating the state's then-extant insanity test and praising the approach of the Model Penal Code.[24] This critique apparently proved persuasive to Representative William Moran, who chaired the House Judiciary Committee.[25] The committee took care to incorporate substantially all of Sections 4.01 (insanity or diminished capacity) to 4.05 (psychiatric examination) of the Model Penal Code into the 1972 bill.[26]

Although a robust draft of the Model Penal Code was completed by 1962, it was not published officially until 1985.[27] The 1985 version included extensive commentary by the drafters, including their discussion of the model provision for court-appointed experts. The commentary notes this section

> allows, but does not require, the court to order that a psychiatrist representing the defendant be permitted to

---

[23]  478 P.2d 801, 806 (Alaska 1970).

[24]  *Id*. at 809-12 (Connor, J., dissenting in part).

[25]  Minutes, H. Judiciary Comm. Hearing on H. Bill (H.B.) 341, 7th Leg., 2nd Sess., May 1, 1972, Alaska Leg. Microfiche Collection No. 30.

[26]  *Id*.; Minutes, H. Judiciary Comm. Hearing on H.B. 341, 7th Leg., 2nd Sess., Jan. 21, 1972, Alaska Leg. Microfiche Collection No. 27; *compare* MODEL PENAL CODE § 4.05 (AM. LAW INST., Proposed Official Draft 1962), *with* ch. 119, §§ 1, 3, SLA 1972. The 1972 bill does not include a version of Section 4.02(2) of the Model Penal Code — which addresses life imprisonment as an alternative to capital punishment — likely because Alaska abolished the death penalty in 1957. Ch. 132, SLA 1957.

[27]  MODEL PENAL CODE (AM. LAW INST. 1985).

witness and participate in the examination. This is meant to assure the defendant opportunity for an adequate psychiatric examination by an expert of his choice. By making it possible for court-appointed and defense experts to participate in the same examination, it may also ameliorate some of the problems of the so-called "battle of the experts."[28]

The drafters also contemplated defense-side experts: "The Model Code does not guarantee [the] defendant an expert of his own choice if he is unable to afford one," but "[g]iven the central place of psychiatric testimony for claims of irresponsibility . . . , the practice of providing such an expert at government expense seems reasonable."[29]

The purpose of the Model Penal Code's psychiatric examination section is clear — to furnish a court-appointed expert, separate from the experts of the prosecution or the defendant. This expert would provide to the court a report addressing "the crucial questions the court must answer."[30] The court-appointed expert's report would be

---

[28] MODEL PENAL CODE § 4.05 cmt. 2 (AM. LAW INST. 1985).

[29] MODEL PENAL CODE § 4.05 cmt. 2 (AM. LAW INST. 1985). AS 18.85.100(a)(2) provides a criminal defendant "the necessary services and facilities of . . . representation, including investigation and other preparation"; the court of appeals has interpreted this to include payment of expert witnesses by the Public Defender Agency or OPA. *See Crawford v. State*, 404 P.3d 204, 206 (Alaska App. 2017) ("[W]hen a criminal defendant receives the services of a court-appointed attorney through either the Public Defender Agency or the Office of Public Advocacy, the defendant is entitled to have the agency provide the necessary incidents of that legal representation — for example, to pay for any necessary clerical support, investigative services, and expert evaluations and testimony.").

[30] MODEL PENAL CODE § 4.05 cmt. 3 (AM. LAW INST. 1985).

"supplemented by psychiatric evidence the defendant or prosecution may wish to introduce."[31]

In its response to the cross-petitions for review the Court System argued the inclusion of two experts shows the legislature envisioned one expert for the prosecution and one for the defense. The superior court apparently shared this interpretation when it announced its "intention that each party [would] be entitled to [its] own expert." But this interpretation is not consistent with the structure of AS 12.47.070, its legislative history, or the commentary to the Model Penal Code from which the statute was derived. The experts are appointed by the court, not retained by the parties. They answer statutorily prescribed questions, not the parties' questions. The experts report directly to the court, not to the parties. Finally, the statute expressly contemplates the parties may retain their own experts.

We hold experts appointed under AS 12.47.070 are experts for the superior court under the supervision of the court and are appointed to make the statutorily specified determinations. They are not under the control of the parties. To the extent the superior court's order envisioned experts supervised by the parties or retained to advance either's position in the case, this was error.

### B. If Possible, API Must Perform Psychiatric Examinations.

The statute provides little guidance as to whom the court should appoint as experts. The only statutory requirement is that an expert be a "qualified psychiatrist[]" or a "forensic psychologist[] certified by the American Board of Forensic Psychology."[32] But Alaska trial courts have historically appointed API to perform these psychiatric evaluations. There is even a form order that the superior court uses to appoint API for

---

[31]     MODEL PENAL CODE § 4.05 cmt. 2 (AM. LAW INST. 1985).

[32]     AS 12.47.070(a).

psychiatric examinations. The original 1972 statute explicitly allowed the court to request the superintendent of API to designate an expert.[33] Although this language was removed in 1982, the legislature rejected a proposal to require "disinterested experts" out of concerns this language could be interpreted as barring evaluations by API.[34]

We believe this historical practice is sound: API is an agency of the State of Alaska which exists in large part to serve the people and needs of the State, including the Court System. The superior court must appoint qualified psychiatrists or psychologists employed by API for evaluations under AS 12.47.070 unless there is a legitimate reason not to — for example, if API does not employ a qualified psychiatrist or psychologist as defined by the statute. This is a determination that must be made by the superior court.

If API cannot provide qualified experts to complete these examinations — either because the court finds no psychiatrists at API are qualified and no forensic psychologists at API are certified by the American Board of Forensic Psychology, or because there is another legitimate reason why API cannot perform the evaluations — then the court shall appoint experts from outside API. The court may solicit recommendations from the parties when deciding whom to appoint,[35] but it is not

---

[33] Ch. 119, § 1, SLA 1972.

[34] Hearing Audio, *supra* note 19, at 1:15:47 – 1:19:27 ("I tend to feel that [the word 'disinterested'] would exclude anybody at API. They are the ones already — if the State arrests somebody, at the time they are arrested, where do they take them? Do they put them in jail or do they put them in API? If they send them to API, the guy who looks at them there I would think would no longer be a disinterested psychiatrist."). Early drafts of the amendment included the "disinterested" language. *See supra* notes 17-18.

[35] *See* MODEL PENAL CODE § 4.05 cmt. 2 n.8 (AM. LAW INST. 1985) ("Under Ariz. R. Crim. P. 11.3(c), the court appoints one expert from both prosecution's and
(continued...)

required to do so; the superior court has broad discretion in selecting its qualified experts. We reiterate: these experts are neutral experts for the court. The experts report to the court and not to the parties, and the scope of their evaluations is controlled by the court.

Here, the superior court explained in its order that it had "confirmed that [API] ha[d] no psychiatrist qualified according to the statute to conduct the examination." It is not clear from the record whether the court made its own independent determination on this issue or simply accepted API's representation. In a letter to the superior court, API's clinical director stated API had only one forensic psychologist on staff and she was not board-certified. But the letter did not discuss the qualifications of any of API's psychiatrists; it merely said, "API does not have psychiatrists who conduct forensic evaluations for Competency to Stand Trial or Mental Culpability." Whether a psychiatrist is qualified within the meaning of AS 12.47.070 is a determination to be made by the court.

We note the legislature did not define or limit the word "qualified" preceding "psychiatrists" as it did in specifying the qualifications it wanted an appointed psychologist to possess — namely that the psychologist be a forensic psychologist certified by the American Board of Forensic Psychology. We hold API is required to provide qualified psychiatrists or psychologists as defined by the statute to serve as

---

[35]   (...continued)
defendant's lists of psychiatric experts to examine the defendant; under N.J. § 2C:4-5(a), the psychiatrist is appointed either from a list agreed to by the court prosecutor and defendant or upon agreement by the court and parties.").

court-appointed, neutral expert witnesses or must explain at an evidentiary hearing why it cannot.[36] If statutorily adequate experts can be appointed from API, they must be.

**C. If The Court Appoints Non-API Experts, The Court System Must Bear Their Costs.**

Historically, API has performed psychiatric or psychological evaluations under AS 12.47.070, and the costs have been absorbed by API. Nothing in the statutory text or legislative history suggests who should bear the costs of these evaluations if API cannot perform them. However the experts are appointed by the court, supervised by the court, and report directly to the court. We conclude that when API is determined to be unable to provide qualified experts, the Court System must bear the costs of the court-appointed experts. This conclusion is consistent with Alaska Administrative Rule 8, which provides that fees for physicians performing "[a]n examination under order of court [for involuntary commitment proceedings] or such other examinations as may be ordered by the court upon its own motion" and "[g]iving medical expert testimony at a hearing when ordered by the court in relation to such examination . . . shall be paid from funds appropriated to the judiciary."

The superior court's order that the parties each bear the cost of one expert was error. If API cannot provide experts to perform the evaluations, then the Court System must bear the costs of the court-appointed experts.[37]

---

[36] If it becomes necessary for the superior court to conduct an evidentiary hearing, that hearing must be searching and produce a comprehensive record for review. While API may not employ psychologists certified by the American Board of Forensic Psychology as required by AS 12.47.070, no such limiting certification is required by the statute for psychiatrists: the statute only requires "qualified psychiatrists."

[37] If API can provide only one qualified expert, then the superior court shall appoint the second expert and the Court System will pay only for the second expert.

## V. CONCLUSION

For the above-stated reasons, we VACATE the superior court's order on the appointment and payment of experts and REMAND with the following instructions:

1. The court shall appoint qualified API psychiatrists or psychologists to perform the required evaluations unless the court finds that no psychiatrists at API are qualified and no forensic psychologists at API are certified by the American Board of Forensic Psychology, or that there is another legitimate reason why API staff cannot perform the evaluations.

2. If the court finds that there are no qualified psychiatrists and no board-certified forensic psychologists at API, the court shall appoint at least two neutral expert witnesses from outside API. The court may solicit recommendations from the parties when deciding whom to appoint. But the experts shall report to the court and not to the parties, and the scope of the evaluations shall be controlled by the court. The Court System shall pay for these non-API experts pursuant to AS 12.47.070 and in accordance with Alaska Administrative Rule 8.