*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| MARQUINN JONES-NELSON, | ) |
| | ) Supreme Court No. S-17555 |
| Petitioner, | ) |
| | ) Court of Appeals No. A-11966 |
| v. | ) Superior Court No. 3AN-11-05289 CR |
| | ) |
| STATE OF ALASKA, | ) O P I N I O N |
| | ) |
| Respondent. | ) No. 7599 – June 24, 2022 |
| | ) |

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Cynthia Strout, Anchorage, for Petitioner. Timothy W. Terrell, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Respondent.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

CARNEY, Justice.
BORGHESAN, Justice, concurring.
BOLGER, Chief Justice, dissenting.

I.      INTRODUCTION

        A defendant convicted of first-degree murder appealed his conviction to the court of appeals, arguing that the trial court erroneously instructed the jury on the law of

self-defense. The court of appeals agreed the instruction was erroneous but concluded that the error was harmless and affirmed the defendant's conviction.

The defendant petitioned us, asking that we reverse the court of appeals' decision and his conviction because the erroneous instruction relieved the State of its burden to disprove self-defense beyond a reasonable doubt. We agree. We therefore reverse the decisions of the superior court and court of appeals and vacate the defendant's conviction because the challenged instruction is legally incorrect and impermissibly lightens the prosecution's burden to disprove self-defense.

## II.    FACTS AND PROCEEDINGS[1]

### A.    Facts

Marquinn Jones-Nelson shot and killed Devante Jordan in March 2011. Both young men were at a party at the home of an acquaintance. At some point Jordan confronted Jones-Nelson in a bedroom, alleging that Jones-Nelson had spread a rumor that Jordan was a "snitch." Jordan then left the bedroom.

Jones-Nelson later called a friend of Jordan's into the bedroom and asked him to get Jordan. When Jordan returned, he approached Jones-Nelson aggressively; Jordan was significantly larger than Jones-Nelson and had previously knocked him unconscious in a fight. Accounts of what happened next differed. Jones-Nelson and a friend testified at trial that Jordan reached into his waistband for a handgun. Another witness testified that he did not see Jordan reach for a gun.

It is undisputed that Jones-Nelson then pulled out a handgun and shot Jordan repeatedly. He disposed of the gun used in the shooting, asked friends to lie about his whereabouts, and attempted to secure false identity documents to flee the state.

---

[1]    The factual details are laid out in greater detail in the court of appeals' decision, *Jones-Nelson v. State*, 446 P.3d 797, 798-801 (Alaska App. 2019).

He was arrested the next day and charged with first-degree murder as well as other offenses that are not at issue here.

## B.    Trial

Jones-Nelson gave notice before trial that he would claim self-defense. At the end of the four-week-long trial, the trial court gave the jury three instructions on the law of self-defense. The first two, numbered 30 and 31, were pattern instructions that described the use of nondeadly force and deadly force in self-defense.[2] These instructions correctly stated the relevant law.[3] The deadly force instruction explained that if a person is justified in using nondeadly force in self-defense, the person can also use deadly force "when the person reasonably believes the use of deadly force is necessary for self-defense."

At the prosecution's request and over Jones-Nelson's objection, the court also gave the following instruction, drafted by the prosecutor:

> A basic tenet of the doctrine of self-defense is that [the] use of deadly force is unreasonable . . . if non-deadly force is obviously sufficient to avert the threatened harm. Even in circumstances when a person is permitted to use deadly force in self-defense[,] that person may still not be authorized to employ all-out deadly force because such extreme force is not necessary to avert the danger.[4]

---

[2]    *See* Alaska Pattern Jury Instructions – Crim. 11.81.330 (nondeadly force); former Alaska Pattern Jury Instructions – Crim. 11.81.335 (2013) (deadly force).

[3]    *See* AS 11.81.330, 11.81.335.

[4]    *Jones-Nelson*, 446 P.3d at 803 (alterations in original).

-3-                                                                            7599

Jones-Nelson's attorney argued that the instruction was "dicta from *Walker*[5] and it's from the dissenting opinion in *Weston*.[6] So . . . I think it's an inaccurate or incorrect statement of the law. It's not necessary. It's not a pattern instruction . . . ."

The prosecutor responded, "Counsel hasn't articulated how it's incorrect. It is dicta from *Weston* but it is a direct quote from . . . *Walker*. It is not an incorrect statement of the law, and it should be given . . . ."

The trial court decided to give the instruction. "I'm going to give this. . . . [A]nd I've given this before. I find that this is a nice, clear statement of the difference between . . . deadly and non-deadly force. I find that the . . . pattern instructions . . . are a little confusing and this one clarifies them."

Neither counsel explicitly discussed the third self-defense instruction in their closing arguments, but both devoted time to discussing self-defense. After explaining to the jury the requirement that a defendant "reasonably believe" deadly force was necessary, the prosecutor argued that the jury had to conclude "that's the level of violence that I am prepared to excuse, forgive, condone, and acquit in the community where I live, that's the standard." He continued by urging the jurors to "decline the invitation to say that the conduct you've heard described in this case is reasonable." Jones-Nelson's attorney then countered the prosecutor's argument, concluding that his client knew "[i]t was either kill or be killed." In rebuttal, the prosecutor argued that the defense was asking the jury to conclude that Jones-Nelson's actions were "reasonable — the level of violence that you would approve of, condone, and vote to acquit . . . —

---

**5**     *State v. Walker*, 887 P.2d 971, 978 (Alaska App. 1994).

**6**     *Weston v. State*, 682 P.2d 1119, 1124 (Alaska 1984) (Compton, J., dissenting).

in the community where you live." He continued, telling the jurors, "You can't make that finding. You can't make that finding. It's not reasonable . . ." because the level of force was not necessary.

The jury rejected Jones-Nelson's self-defense claim and convicted him of first-degree murder.

### C.     Appeal

Jones-Nelson raised two issues on appeal but raises only one in his petition to us.[7] That issue is the self-defense instruction drafted by the prosecutor. Jones-Nelson argued before the court of appeals that the instruction erroneously suggested that the jury evaluate the use of deadly force retrospectively "to determine whether deadly force was in fact *objectively necessary*, rather than . . . whether the defendant's use of deadly force was *reasonable under the circumstances known to the defendant at the time*."[8]

The appeals court first agreed with Jones-Nelson that "a defendant may be justified in using deadly force (even 'all-out' deadly force) if, under the circumstances known to the defendant, the defendant reasonably believed that this amount of force was necessary — even if it later turns out that this belief was mistaken, and that lesser force would have sufficed."[9] It also "agree[d] with Jones-Nelson that the wording of the challenged instruction failed to unambiguously recite the concept of 'reasonableness'

---

[7]     *Jones-Nelson*, 446 P.3d at 798-99. In addition to the self-defense issue raised here, Jones-Nelson argued (and the State conceded) that the trial court improperly prohibited him from eliciting testimony about Jordan's reputation for violence or past acts of violence. *Id.* The court of appeals held that the error was harmless. *Id.*

[8]     *Id.* at 803 (emphasis in original).

[9]     *Id.* at 803-04.

that is central to the law of self-defense."[10] But the court concluded that when the instruction "is read in conjunction with the other jury instructions on self-defense, and in the context of the parties' closing arguments . . . , there is little chance that the jurors would have been misled on this issue."[11] The court pointed out that neither counsel had referred to the instruction in closing arguments and affirmed Jones-Nelson's conviction.[12]

In a concurring opinion, Judge Allard commented on "the danger of lifting language from appellate court decisions and then asking jurors to interpret and apply this language without the benefit of its original context."[13] Addressing the prosecutor's argument that some of the language in the instruction "was, drawn, essentially *verbatim*," from an instruction the court of appeals had upheld in a previous case, she cautioned, "The fact that a jury instruction contains a *verbatim* quote from one of this Court's decisions does not guarantee that the instruction is an accurate or complete statement of the law."[14]

## III. STANDARD OF REVIEW

The parties dispute the applicable standard of review. The adequacy of jury instructions is generally a legal question, which is reviewed de novo.[15] But if a party

---

[10] *Id.* at 803.

[11] *Id.* at 803-04.

[12] *Id.* at 804.

[13] *Id.* at 805 (Allard, J., concurring).

[14] *Id.*

[15] *Young v. State*, 374 P.3d 395, 405 (Alaska 2016).

fails to preserve the issue for appeal, we review for plain error.[16] Jones-Nelson argues that he preserved his argument for appeal, while the State argues that Jones-Nelson failed to preserve his objection by inadequately explaining his grounds for objecting. We review de novo the issue of whether a claim has been preserved for appeal.[17] Under the de novo review standard, "we exercise our independent judgment."[18] Finally, questions of law involving the interpretation of a statute are reviewed by using a sliding scale approach where "the plainer the language of the statute, the more convincing the contrary legislative history must be."[19]

## IV. DISCUSSION

Jones-Nelson argues that the court of appeals was wrong to conclude that the incorrect jury instruction was harmless. And he argues that the instruction reduced the State's duty to disprove self-defense beyond a reasonable doubt. The State argues that the jury instruction correctly stated the law and that any imperfections in the jury instruction did not affect the verdict. We agree with Jones-Nelson that the instruction erroneously described the law of self-defense, the error was constitutional in nature, and the error was not harmless beyond a reasonable doubt.

### A. Jones-Nelson Preserved His Right To Appeal The Jury Instruction.

We first decide which standard of review to apply. "To preserve an issue for appeal, a party must clearly state the grounds for [the] objection 'so that the [superior]

---

[16]   *Jordan v. State*, 420 P.3d 1143, 1151 (Alaska 2018).

[17]   *Id.* at 1148.

[18]   *Johnson v. State*, 328 P.3d 77, 81 (Alaska 2014).

[19]   *State v. Groppel*, 433 P.3d 1113, 1116 (Alaska 2018) (quoting *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1121-22 (Alaska 2017)).

court may intelligently rule upon the objection.' "[20] The State argues that Jones-Nelson failed to clearly state the grounds for his objection. We disagree. We have held that an objection was not properly preserved where a party objected to one witness's testimony and relied on that objection to challenge a different witness's testimony,[21] and when a party, having been asked by a judge what his grounds were for objecting, failed to articulate them.[22] But we have also held that a verbal objection was sufficient to preserve an objection for appeal even where it "did not articulate the finer points of [a party's] argument on appeal."[23]

Jones-Nelson's attorney timely objected to the instruction, saying, "[I]t's dicta from *Walker* and it's from the dissenting opinion in *Weston*. So, I mean, it's . . . an inaccurate or incorrect statement of the law. It's not necessary. It's not a pattern instruction; [I] would ask [it] not be given." The court heard a response from the State before admitting the instruction and moving on to other instructions. Jones-Nelson's attorney was not asked for further explanation or given the opportunity to clarify his objection before the superior court ruled. Although Jones-Nelson's objection could have been more detailed, it clearly identified the instruction objected to and indicated counsel's belief that the instruction was an inaccurate statement of the law because it was drawn from dicta from one case and a dissent from another.

---

[20] *Davison v. State*, 282 P.3d 1262, 1267 (Alaska 2012) (alteration in original) (quoting *Williams v. State*, 629 P.2d 54, 62 (Alaska 1981)).

[21] *Leopold v. State*, 278 P.3d 286, 292-93 (Alaska 2012).

[22] *Williams*, 629 P.2d at 61-62.

[23] *Davison*, 282 P.3d at 1267; *see also Manes v. Coats*, 941 P.2d 120, 125 n.4 (Alaska 1997) (holding objection was preserved where counsel's "remarks indicate[d] counsel's opposition to the omission, as well as the basis for that opposition," even though objection was "oblique").

In *Young v. State*, we cautioned that "as long as the instructions actually given . . . adequately set forth the applicable law," trial courts should refrain from giving additional instructions drafted by parties "unless [such an instruction] 'would substantially aid the jury in arriving at a just verdict.' "[24] In addition to objecting to the combination of language pulled from dicta in one case and the dissenting opinion in another, Jones-Nelson's attorney argued that the State's instruction did not correctly state the law and was "not a pattern instruction" and "not necessary."

Alaska Criminal Rule 30(a)'s test to determine whether an objection is sufficient to preserve an issue for appeal is borrowed from cases construing the similar provisions of Alaska Civil Rule 51(a).[25] The objection must "enable the trial judge to avoid error by affording [the judge] an opportunity to correct [the] charge before it goes to the jury."[26] An objection is sufficient to preserve an issue "only if the judge is clearly made aware of the alleged error in or omission from the instructions. Counsel's objections must be specific enough to clearly bring into focus the precise nature of the asserted error."[27]

Jones-Nelson alerted the trial court that there was no need to provide further instruction on self-defense beyond the pattern instructions and that there was a danger that doing so would be "an inaccurate or incorrect statement of the law" resulting from

---

[24] 374 P.3d 395, 428 (Alaska 2016) (alteration omitted) (quoting *Robart v. State*, 82 P.3d 787, 795 (Alaska App. 2004)).

[25] *Lengele v. State*, 295 P.3d 931, 935 (Alaska App. 2013); *see also Saxton v. Harris,* 395 P.2d 71, 73 (Alaska 1964) (detailing the civil standard).

[26] *Saxton*, 395 P.2d at 73.

[27] *Id.* (citing *Mitchell v. Knight*, 394 P.2d 892 (Alaska 1964)).

the way the instruction had been drafted. He sufficiently preserved this issue for appeal. We therefore review the jury instruction de novo.[28]

## B. The Instruction Incorrectly Directed The Jury To Retroactively Assess The Reasonableness Of Jones-Nelson's Use Of Force.

Jones-Nelson argues that the instruction improperly directed the jury to retroactively assess his use of force. Alaska has codified the common law of self-defense. The use of nondeadly force is governed by AS 11.81.330. When a defendant uses deadly force as defined in AS 11.81.900(b)(16), the defendant must show that the additional requirements of AS 11.81.335 are satisfied.[29] A person is entitled to use deadly force in self-defense if nondeadly force is justified under AS 11.81.330 and the person "reasonably believes the use of deadly force is necessary for self-defense against . . . death[,] . . . serious physical injury," or one of the crimes listed in the statute.[30]

Whether such force is necessary must be evaluated based on the circumstances as they appeared to the defendant at the time the force was used.[31] We have recognized that "[d]etached reflection cannot be demanded in the presence of an uplifted knife."[32] For that reason, "[e]ven if the defendant's fear turns out to have been mistaken, [self-defense] still may be established if the defendant proves that, under the

---

[28] *Jordan v. State*, 420 P.3d 1143, 1152 (Alaska 2018).

[29] *See Ha v. State*, 892 P.2d 184, 190 (Alaska App. 1995).

[30] AS 11.81.335(a).

[31] *McCracken v. State*, 914 P.2d 893, 898 (Alaska App. 1996) (citing *Weston v. State*, 682 P.2d 1119, 1121 (Alaska 1984)).

[32] *Weston*, 682 P.2d at 1121-22 (alteration in original) (quoting *Brown v. United States*, 256 U.S. 335, 343 (1921)).

circumstances, he or she reasonably feared imminent deadly attack at the hand of the victim."[33]

Once a defendant has introduced "some evidence" placing self-defense at issue, the State has the burden of disproving the defense beyond a reasonable doubt.[34] The burden upon a defendant to place self-defense at issue is thus significantly less than the prosecution's resulting obligation to disprove it in order to convict the defendant of an offense.

In this case, the first two self-defense instructions were pattern instructions presenting the jury with the definitions of nondeadly and then deadly force.[35] The pattern instructions closely tracked the statutory language.[36] The third instruction, number 34, was drafted by the prosecutor. In a 2006 article written "by a prosecutor for prosecutors . . . [from] a prosecutorial focus,"[37] the prosecutor addressed "the daunting task of disproving self-defense beyond a reasonable doubt."[38] Among the topics explored in the article was the use of excessive force.[39]

---

[33]    *McCracken*, 914 P.2d at 898.

[34]    *Morrell v. State*, 216 P.3d 574, 577-78 (Alaska App. 2009).

[35]    *See* Alaska Pattern Jury Instructions – Crim. 11.81.330 (nondeadly force); former Alaska Pattern Jury Instructions – Crim. 11.81.335 (2013) (deadly force).

[36]    Instruction 30 corresponds to AS 11.81.330, which governs use of nondeadly force in self-defense. Instruction 31 corresponds to AS 11.81.335, which governs use of deadly force in self-defense.

[37]    James Fayette, *"If You Knew Him Like I Did, You'd Have Shot Him, Too . . ." A Survey of Alaska's Law of Self-Defense*, 23 ALASKA L. REV. 171, 174 (2006).

[38]    *Id.* at 233.

[39]    *Id.* at 202-03.

The article correctly stated that because the use of force in self-defense is permitted only "when and to the extent" necessary, it is possible that a defendant's use of force could become excessive at some point.[40] The article then offered the following advice: "When faced with an excessive force scenario, a court could find useful language in Justice Matthews's *Weston* opinion and Judge Mannheimer's *Walker* opinion, and from these two could craft a useful 'excessive force' instruction."[41] What followed was a three-sentence jury instruction, the last two sentences of which are identical to Instruction 34:

> A basic tenet of the doctrine of self-defense is that use of deadly force is unreasonable if non-deadly force is obviously sufficient to avert the threatened harm. Even in circumstances when a person is permitted to use deadly force in self-defense, that person may still not be authorized to employ all-out deadly force because such extreme force is not necessary to avert the danger.[42]

The court of appeals concluded that the error in Instruction 34 was that "the wording . . . failed to unambiguously recite the concept of 'reasonableness' that is central to the law of self-defense."[43] The court observed that the question before the jury "is not whether a defendant's use of force, and the level of force used, was necessary in hindsight (or, using the language of the challenged instruction, whether some lesser amount of force can now be seen to be 'obviously sufficient to avert the threatened

---

[40]    *Id.* at 202.

[41]    *Id.* at 203.

[42]    *Id.*

[43]    *Jones-Nelson v. State*, 446 P.3d 797, 803 (Alaska App. 2019).

harm').”[44] We agree. Because the instruction implied that reasonableness could be assessed in hindsight, the instruction was in error.

### C. The Instruction Erroneously Distinguished Between Deadly And "All-Out Deadly" Force.

Jones-Nelson also argues that the instruction improperly distinguished between deadly force and "all-out deadly force" or "extreme force." The second sentence of the instruction directed that "[e]ven in circumstances when a person is permitted to use deadly force in self-defense[,] that person may still not be authorized to employ *all-out deadly force* because such *extreme force* is not necessary to avert the danger."[45] The instruction is derived from language in *State v. Walker*.[46] Jones-Nelson contends that language was taken out of context and was "quite specific to the facts of that case." The court of appeals rejected this argument, noting that the "instruction correctly captured the concept that the defendant's use of force must be proportionate to the perceived danger."[47]

Alaska law permits the use of deadly force "*when and to the extent* the person reasonably believes the use of deadly force is necessary."[48] The State argues that this "when and to the extent" language requires courts to distinguish not only between deadly and nondeadly force, but also between different degrees of deadly force.[49] In

---

[44] *Id.*

[45] *Id.* (second alteration in original) (emphasis added).

[46] 887 P.2d 971, 978 (Alaska App. 1994).

[47] *Jones-Nelson*, 446 P.3d at 803.

[48] AS 11.81.335(a) (emphasis added).

[49] The State concedes that defendants are not required to "use the least amount
(continued...)

addition to *Walker*, the State bases its argument on the common law principle of proportionality. We have not previously addressed whether the "when and to the extent" language in AS 11.81.335(a) requires a defendant authorized to use deadly force to distinguish between different degrees of deadly force. We hold that it does not.

Alaska's law of self-defense is contained in a pair of interlocking statutes. The first, AS 11.81.330, sets out the general principles authorizing the use of nondeadly force: "A person is justified in using nondeadly force upon another *when and to the extent* the person reasonably believes it is necessary for self-defense against what the person reasonably believes to be the use of unlawful force by the other person," unless a specified exception applies.[50] Alaska Statute 11.81.335(a) provides for the use of deadly force in self-defense: "[A] person who is justified in using nondeadly force in self-defense under AS 11.81.330 may use deadly force in self-defense . . . *when and to the extent* the person reasonably believes the use of deadly force is necessary for self-defense against (1) death; [or] (2) serious physical injury . . . ."[51] Both statutes require that the person using force in self-defense reasonably believe that the force is necessary and that the person reasonably believe that the other person is using unlawful force. The plain language of both statutes makes clear that if either of these beliefs is unreasonable at the time the person uses force in self-defense, then the use of force in self-defense is not permitted. Nothing in the plain language of AS 11.85.335(a) even implies an

---

[49]     (...continued)
of force possible" but argues that a reviewing court must consider "how closely the defendant's use of force corresponds with the minimum force necessary to meet the threat."

[50]     AS 11.81.330 (emphasis added).

[51]     AS 11.81.335(a) (emphasis added).

additional reasonable belief about the level of deadly force necessary to defend against death or serious physical injury.

Although the dissent asserts that our decision removes a "proportionality" requirement in Alaska's law of self-defense which implies levels of deadly force, its discussion actually supports the premise that the use of any force in self-defense is justified only when *necessary*.[52] *State v. Walker* presented a similar scenario. Although the trial judge ruled the verdicts inconsistent after the jury acquitted Walker of stabbing one man in the arm but convicted him for stabbing a second man repeatedly in the back, the jury found Walker's second use of deadly force was not necessary for self-defense.[53] Jones-Nelson's case also raises the question of the necessity of firing shots at Jordan after he fled the room, but that issue has nothing to do with the degree of force Jones-Nelson used.[54]

---

[52]    Dissent at 42-47. Our interpretation of the "to the extent necessary" language is temporal — deadly force is not justified after its use for self-defense has ended. The dissent, in contrast, interprets it to mean that only a proportionally necessary amount of deadly force can be justified, using the example of a police officer continuing a choke-hold after subduing a subject. But neither interpretation would allow an officer to continue using deadly force against a subdued subject.

[53]    *State v. Walker*, 887 P.2d 971, 976-77 (Alaska App. 1994).

[54]    The dissent refers to statutes governing the use of force by police officers against suspects and by parents against children to argue that the self-defense statutes contain an element of proportionality. *See* Dissent at 42-45 (first citing AS 11.81.370; and then citing AS 11.81.430(a)(1)). Those different statutory schemes address different policy concerns and explicitly incorporate the concept of proportionality; the self-defense statutes do not. *Compare* AS 12.25.070 (limiting an arresting officer or person to "necessary *and proper*" force (emphasis added)), *and* AS 11.81.430 (limiting parents to "reasonable *and appropriate* nondeadly force" (emphasis added)), *with* AS 11.81.335 (permitting the use of deadly force "when and to the extent the person reasonably believes the use of deadly force is necessary").

The legislative history of these statutes indicates that the legislature meant the "when and to the extent" language to refer to a binary distinction between deadly and nondeadly force.[55] The commentary to the Tentative Draft for the Alaska Criminal Code Revision of 1977 refers to the language of both AS 11.81.330 and AS 11.81.335, which the tentative draft had originally merged into a single provision.[56] While the draft mentions both levels and degrees of force, the commentary portrays "deadly force" as a singular degree or level of force.[57] It uses the term "level" to explain the dichotomy between deadly and nondeadly force. "The use of force is classified according to whether it is 'physical force' or, a special level of physical force: 'deadly physical

---

[55]    The dissent argues that AS 11.81.900(b)(16)'s definition of "deadly force" mandates consideration of varying degrees of deadly force when deciding whether deadly force was justified because the definition "includes intentionally . . . pointing a firearm in the direction of another person . . . and intentionally placing another person in fear of imminent serious physical injury by means of a dangerous instrument[.]" But this language was added two years after the self-defense statutes were enacted. Ch. 102, §§ 29-32, SLA 1980. To reduce the possibility that threatening deadly force would "tragically escalate a conflict, the legislature concluded that only peace officers making an arrest should have the authority to threaten deadly force in situations where the actual use of deadly force was not justified." Comment. & Sectional Analysis on the Amendments to Alaska's Revised Crim. Code, S. Journal Supp. No. 44 at 20, 1980 S. Journal (May 29, 1980).

The definition of "deadly force" in AS 11.81.900(b)(16) does not differentiate these examples by degree of deadliness; rather, it lists them all because they are all deadly. Including varying degrees of deadliness within the statutory definition of "deadly force" confirms the binary distinction between nondeadly and deadly force.

[56]    Alaska Criminal Code Revision Part II, at 39 (Tent. Draft 1977) (hereinafter Tentative Draft).

[57]    *Id.* at 45-47.

-16-                                                                    **7599**

force.' "[58] The commentary mentions "situations in which any degree of force may be appropriate including deadly force."[59] Even the commentary's explication of the "when and to the extent . . . necessary" language suggests a split between deadly and nondeadly force, rather than a spectrum of degrees of deadly force:

> Any use of force is justifiable only "*when and to the extent* [the person claiming the defense] reasonably believes it necessary." Therefore, even though the use of "*deadly physical force*" may be authorized in a particular section, it is not justified if the person claiming the defense believed at that time that he could accomplish his purpose by the use of *non-deadly force*.[60]

The commentary explains "to what degree a person is justified in using physical force against another in self-defense" by saying, "Subject to the limitations on the use of *deadly physical force*, [a person] may exercise that degree of force which he reasonably believes to be necessary."[61]

---

[58]    *Id.* at 45.

[59]    *Id.* at 47.

[60]    *Id.* at 48 (first alteration in original) (emphasis added). The State claims that the staff counsel for the revision commission acknowledged that the "when and to the extent" language reflects a proportionality requirement, but the article it cites merely echoes the passages quoted in this paragraph. For instance, staff counsel wrote that because of the "when and to the extent" language, use of deadly force "will not be justified if [the claimant] believed at the time that he could have accomplished his purpose by the use of 'non-deadly physical force' " and that "where the [claimant] believes a verbal request would be adequate, even 'non-deadly physical force' may not be used or threatened." *See* Barry Jeffrey Stern, *The Proposed Alaska Revised Criminal Code*, 7 UCLA ALASKA L. REV. 1, 26 (1977).

[61]    Tentative Draft, at 51 (emphasis added).

There is little support for the State's argument that common law principles of proportionality require a distinction between different degrees of deadly force.[62] In *Rowe v. United States*, the United States Supreme Court held that a defendant wielding deadly force in self-defense had no duty to "so carefully aim[] his pistol as to paralyze the arm of his assailant, without more seriously wounding him."[63] Many courts have applied general principles of proportionality to self-defense without distinguishing between subcategories of deadly force.[64]

We have adopted the United States Supreme Court's view that "[d]etached reflection cannot be demanded in the presence of an uplifted knife."[65] We agree with the Court's observation that a person justified in using deadly force need not "consider whether a reasonable man might not think it possible to fly with safety or to disable his

---

[62] *But see Rajnic v. State*, 664 A.2d 432, 435-36 (Md. App. 1995) (holding that evidence was sufficient for jury to conclude that appellant did not reasonably believe he was in danger of death or serious bodily harm or that he used excessive force); *Fersner v. United States*, 482 A.2d 387, 393 (D.C. 1984) (interpreting jury instruction defining deadly force as force "likely to cause death or serious bodily harm" to mean there are "degrees of deadly force").

[63] 164 U.S. 546, 558 (1896).

[64] *See, e.g., State v. Etienne*, 35 A.3d 523, 537 (N.H. 2011) (applying common law principles of proportionality to require "reasonable necessity to justify the use of deadly force" absent explicit statutory language to that effect); *State v. Walden*, 932 P.2d 1237, 1240 (Wash. 1997) (en banc) (approving portion of jury instruction explaining that defendant "has no right to repel a threatened assault" with deadly force when he does not have reasonable grounds to believe he "is in imminent danger of death or great bodily harm" (emphasis omitted)); *State v. Rader*, 186 P.79, 85-86 (Or. 1919) (making no distinctions between different forms of deadly force); *Geralds v. State*, 647 N.E.2d 369, 373 (Ind. App. 1995) (holding that defendant's use of deadly force was "excessive in the face of [the victim's] obvious retreat and lack of aggression towards him").

[65] *Weston v. State*, 682 P.2d 1119, 1121-22 (Alaska 1984) (alteration in original) (quoting *Brown v. United States*, 256 U.S. 335, 343 (1921)).

-18-                                                                7599

assailant rather than to kill him."[66]  Legislative history and the common law do not support the State's argument that AS 11.81.335(a) distinguishes between regular and "all-out" deadly force.  The State concedes that a defendant "faced with a knife-wielding assailant" need not "analyze each [defensive] option and decide which would best do the defensive job while minimizing the harm to one's assailant, at risk of getting stabbed . . . while pondering the options."  But distinguishing between ordinary deadly force and "all-out deadly force" would require defendants to do just that.

The *Walker* decision from which the jury instruction was drawn involved an unusual context; the defendant in *Walker* claimed self-defense against one victim who was stabbed in the arm and one who was stabbed in the back.[67]  But to the extent *Walker* stands for the proposition that there are different levels of deadly force, it misstates Alaska law.  Alaska law recognizes only two categories of force:  nondeadly and deadly.  It is a binary choice:  either the force used is deadly or it is not.  The instruction implies that there is an additional distinction — that there can be more or less deadly versions of deadly force.  This is legal error.

## D.     The Jury Instruction Was Not Harmless Error.

The court of appeals held that the error of including Instruction 34 was harmless, reasoning that "when the supplemental instruction is read in conjunction with the other jury instructions . . . and in the context of the parties' closing arguments . . .

---

[66]     *Brown*, 256 U.S. at 343.

[67]     *State v. Walker*, 887 P.2d 971, 976 (Alaska App. 1994).

there is little chance that the jurors would have been misled on this issue."[68]  We disagree.

Where an error is not structural,[69] the defendant must show that the error was prejudicial to obtain relief.[70]  If the error is a constitutional violation, it "will always affect substantial rights and will be prejudicial unless the State proves that it was harmless beyond a reasonable doubt."[71]  Errors undermining the State's burden to prove

---

[68]     *Jones-Nelson v. State*, 446 P.3d 797, 803-04 (Alaska App. 2019).  The court of appeals held the jury instruction was harmless because "there [was] little chance that the jurors would have been misled on this issue."  *Id.*  But the court's analysis itself was mistaken: it should have analyzed whether the error was "harmless beyond a reasonable doubt."  *See Adams v. State*, 261 P.3d 758, 771 (Alaska 2011) (explaining harmless beyond a reasonable doubt standard is used to analyze constitutional violations).

[69]     Jones-Nelson implies that the jury instruction may constitute structural error, which is not subject to harmlessness review.  *See Jordan v. State*, 420 P.3d 1143, 1148 (Alaska 2018) ("Structural errors require automatic reversal and a new trial.").  Jones-Nelson only hints at this argument in his briefing and does not discuss the factors considered when deciding whether to classify an error as structural.  *See id.* (listing " 'the difficulty of assessing the effect of the error' and . . . other factors, including fundamental fairness and whether harmlessness is irrelevant under the circumstances" as factors to be considered when determining whether error is structural).  We consider this argument waived due to inadequate briefing by Jones-Nelson.  *See Windel v. Carnahan*, 379 P.3d 971, 980 (Alaska 2016) (holding argument was waived where it was "given only a cursory statement in the argument portion of [the] brief" (quoting *Burts v. Burts*, 266 P.3d 337, 344 (Alaska 2011))).

[70]     *See Young v. State*, 374 P.3d 395, 429-30 (Alaska 2016) (holding that failure to give requested jury instruction was harmless error).

[71]     *Khan v. State*, 278 P.3d 893, 900 (Alaska 2012) (emphasis omitted) (quoting *Adams*, 261 P.3d at 773).

its case beyond a reasonable doubt are constitutional errors.[72] We have previously applied the constitutional error standard to errors that limited a defendant's evidence and argument.[73] We agree with the court of appeals that jury instructions erroneously defining an offense's or affirmative defense's elements in a way that eases the State's burden of proof are constitutional error.[74] In this case, the erroneous instruction lightened the State's burden to disprove self-defense beyond a reasonable doubt. Therefore the error was constitutional and the State has the burden of proving that the error was harmless beyond a reasonable doubt.

Jones-Nelson argues that Instruction 34 was prejudicial because it could have led the jury to "weigh whether, in hindsight, the force and degree of force Jones-Nelson used was actually necessary," or to conclude that Jones-Nelson was barred from claiming self-defense because "he *could* have exercised other, less violent options." (Emphasis added.) The State argues that the instruction was not prejudicial because "Jones-Nelson's version of events was highly implausible" when considered against the evidence and because any error was cured by counsel's statements in closing arguments.

The State argues the jury most likely rejected Jones-Nelson's self-defense claim because Jones-Nelson did not sincerely believe he was in danger of death or serious bodily injury. If that were the case, the erroneous instruction would not have affected the jury's verdict, because the jury would have rejected Jones-Nelson's self-defense claim "at a higher level on the decision tree." The State argues that Jones-

---

[72] *Adams v. State*, 440 P.3d 337, 344-45 (Alaska App. 2019), *abrogated on other grounds by Phornsavanh v. State*, 481 P.3d 1145, 1159-60 (Alaska App. 2021).

[73] *Smithart v. State*, 988 P.2d 583, 589 (Alaska 1999).

[74] *See, e.g.*, *Adams*, 440 P.3d at 344-45; *Brown v. State*, 698 P.2d 671, 673 (Alaska App. 1985); *Coney v. State*, 699 P.2d 899, 904 (Alaska App. 1985) (disapproving instruction that reduced prosecution's burden of proof).

Nelson's self-defense claim was "completely implausible" for several reasons. First, the State argues that it is implausible that Jones-Nelson could have seen Jordan reach for a silver gun and in the same moment taken a black gun off a window ledge, turned back to Jordan, and shot him, all before Jordan could get off a single shot. Even though this version of events may seem unlikely, the jury is the arbiter of credibility and Jones-Nelson's testimony on this point did not stand alone. It was corroborated by another witness's testimony that Jones-Nelson shot after Jordan reached for a silver gun while moving threateningly toward Jones-Nelson and that Jones-Nelson then picked up the silver gun and carried it away. This version of events was also corroborated by the physical evidence of both a black gun and a silver gun recovered in the case and by another witness's testimony that she saw Jones-Nelson with a silver gun the night of the shooting. While deliberating, the jury requested to re-hear testimony "regarding the silver gun," so the jury appeared to at least consider the possibility that Jones-Nelson's story was true.

Second, the State points out that Jones-Nelson's actions after the shooting show consciousness of guilt. The State points to evidence that Jones-Nelson lied and asked others to lie about his whereabouts, sought false identity papers to flee the state, and had a friend dispose of the gun used in the shooting. The State points out that "courts have recognized that flight and suppression of evidence are probative of a defendant's lack of . . . belief that their crime was justified as self-defense." But, as the court of appeals has recognized, "[t]here are . . . many reasons why a person might flee a crime scene, and consciousness of guilt is only one potential reason."[75] The jury could have agreed with the State that Jones-Nelson's actions after the shooting were probative

---

[75] *Wilkerson v. State*, 271 P.3d 471, 475 (Alaska App. 2012).

of a guilty conscience, but it could also have concluded that Jones-Nelson feared the police or retaliation from Jordan's associates even if he had acted in self-defense.

Third, the State argues that Jones-Nelson's story is inconsistent with his statements after the shooting, including a statement that he had "smoked" Jordan. In a recorded call with a friend, Jones-Nelson implied that he shot Jordan because Jordan "disrespected" him and because Jordan was a "snitch." On the same call, Jones-Nelson said, "[Jordan] came at me disrespectful, like, he towering over me," and that "he came at me like he wanted to box" so "I just popped him point blank right there." Although this evidence strongly supported the State's version of events, it is not inconceivable that the jury could have viewed these statements as after-the-fact posturing to a woman Jones-Nelson was trying to impress. When cross-examined about the statements, Jones-Nelson explained, "I like her . . . . I don't want her to know I'm really scared like that, you know what I'm saying?" Pressed further, he stated that he was on drugs at the time and "on the phone venting" to "a female I've been talking to." While Jones-Nelson's statements in the phone call are strong evidence against him, the jury could still reasonably have interpreted them differently than the State suggests.

The State also argues that any harm from Instruction 34 was cured by arguments of counsel, namely the prosecutor's explanation of the objective reasonableness standard during closing argument. The court of appeals has "repeatedly held that [closing arguments] can cure flaws or omissions in the jury instructions."[76] Jones-Nelson counters that precedent from the court of appeals establishes only that closing arguments can cure flaws in jury instructions if they correct those flaws directly.

---

[76] *Buckwalter v. State*, 23 P.3d 81, 87 (Alaska App. 2001).

In this case, Jones-Nelson contends, the prosecutor's arguments actually *compounded* the instruction's defects.[77]

The State did concede that reasonable belief must be assessed from the defendant's point of view. But the prosecutor also invited jurors to assess reasonableness from a removed perspective, saying that a defendant's belief being reasonable means "[a] reasonable person would do exactly what [the defendant] did." Further, the prosecutor argued that Jones-Nelson's behavior was not reasonable because it "doesn't reflect community standards." He also argued that finding Jones-Nelson had acted in self-defense would be equivalent to saying, "[T]hat's the level of violence that I am prepared to excuse, forgive, condone, and acquit in the community where I live." In rebuttal, the prosecutor reiterated that finding Jones-Nelson acted in self-defense required the jury to conclude that his actions were "the level of violence that you would approve of." This is not what the law requires.

The prosecutor's argument also compounded the erroneous instruction that "all-out" deadly force is not authorized even if deadly force is. The law does not require that deadly force used in self-defense be a "level of violence that [a juror] would approve of." By tying the permitted level of deadly force to community standards rather than what the defendant reasonably believed was necessary, the prosecutor invited the jury to approve only certain "levels" of deadly force. And he told the jury, "[Y]ou need not

_____

[77]     Jones-Nelson also argues in his reply brief that it is "impossible to square" case law holding that defective jury instructions can be cured by closing arguments with case law holding that jurors are presumed to follow jury instructions and with the court's instruction that the jury must "follow the court's instructions and not the arguments of counsel." *See Pralle v. Milwicz*, 324 P.3d 286, 289 (Alaska 2014) ("We presume that a jury follows the court's instructions"). Because Jones-Nelson first raised this argument in his reply brief, the argument is waived and we do not consider it. *State v. Parker*, 147 P.3d 690, 698 (Alaska 2006) ("[W]e do not consider arguments raised for the first time in a reply brief.").

be unanimous about why self-defense does not [apply]. Six of you could say force is excessive. Six of you could say not reasonable, and so forth. Doesn't matter." This suggests that even if deadly force were reasonable, the jury could still reject the self-defense claim if they thought the degree of deadly force was excessive. Far from curing the instruction, this argument exacerbated it.

Nor is the erroneous instruction cured by the use of Instructions 30 and 31, which correctly stated the law of self-defense. The jury could have been confused about the reasonableness standard even in light of these correct instructions. And Instructions 30 and 31 did nothing to correct Instruction 34's "all-out deadly force" language.

The State has failed to show that the erroneous instruction was harmless beyond a reasonable doubt. Therefore, we reverse the court of appeals' holding that the error was harmless.

## V.     CONCLUSION

We REVERSE the court of appeals' decision that the erroneous jury instruction was harmless error. Accordingly, we VACATE the conviction and REMAND the case to the superior court for further proceedings consistent with this opinion.

BORGHESAN, Justice, concurring.

I join the vast majority of the court's opinion and disagree only with one aspect of the court's harmless error analysis. Although true that Jury Instruction 34 "failed to unambiguously recite the concept of 'reasonableness' that is central to the law of self-defense,"[1] I believe this error is harmless beyond a reasonable doubt. It is hard to see how the jury could have failed to consider whether using deadly force was reasonable from Jones-Nelson's perspective: jury instructions must be read as a whole;[2] the preceding jury instructions explained that the jury must decide whether the defendant reasonably believed deadly force was necessary; and we presume that the jury follows the instructions as written.[3] But because I agree with the court's reasoning that the error concerning the degree of force permitted is not harmless beyond a reasonable doubt, I agree with its ultimate conclusion to reverse the judgment.

---

**1** *Jones-Nelson v. State*, 446 P.3d 797, 803 (Alaska App. 2019).

**2** *Geisinger v. State*, 498 P.3d 92, 111 (Alaska App. 2021) ("[A] claim of error relating to jury instructions must be evaluated by reference to the content of the instructions as a whole.").

**3** *Coffin v. State*, 425 P.3d 172, 175 (Alaska App. 2018) ("As a general matter, jurors are presumed to follow the instructions that they are given . . . .").

BOLGER, Chief Justice, dissenting.

The vital question raised by the court's opinion is whether a person who uses deadly force in self-defense is authorized to kill his attacker when killing is not reasonably necessary. The court's opinion concludes that such force may be justified even if it is unnecessary, reasoning that the self-defense statute does "not" require "a defendant authorized to use deadly force to distinguish between different degrees of deadly force"[1] and that "[n]othing in the plain language of [the self-defense statute] even implies an additional reasonable belief about the level of deadly force necessary to defend against death or serious physical injury."[2]

I disagree with these conclusions. Throughout the justification statutes, the legislature consistently limits the use of force "to the extent" the defendant reasonably believes it is necessary. This language prevents a defendant from using excessive force in a variety of circumstances when the use of lesser force may be justified. The drafters specifically intended to follow our prior case law to avoid the implication that an unnecessary homicide could be justified as self-defense. Our courts have thus previously interpreted these statutes to require the use of force to be reasonably proportionate to the perceived threat.

## A. Background

As noted in the court's opinion, Jones-Nelson shot Devante Jordan after a confrontation in the bedroom of an apartment during a party.[3] The prosecution also presented strong evidence that Jones-Nelson continued to shoot Jordan in the back as he was trying to flee. One tenant, Nikita Sanders, testified that Jones-Nelson followed

---

[1]    Slip Op. at 14.

[2]    Slip Op. at 14-15.

[3]    Slip Op. at 2.

Jordan out of the bedroom and shot him four times in the back as he ran into the kitchen. On cross-examination, Jones-Nelson agreed with the prosecutor's suggestion that he "fired shots at a man who was running away from [him], who had dropped his own gun, and who was yelling for help." Another witness testified that Jones-Nelson admitted to him that, after Jordan began to run away, Jones-Nelson ran behind him and shot him five more times. And the photographs from Jordan's autopsy showed that he had indeed been shot four times in the back.

At the end of the trial, the prosecution proposed an instruction to deal with this evidence:

> A basic tenet of the doctrine of self-defense is that use of deadly force is unreasonable, if non-deadly force is obviously sufficient to avert the threatened harm. Even in circumstances when a person is permitted to use deadly force in self-defense that person may still not be authorized to employ all-out deadly force because such extreme force is not necessary to avert the danger.

The proposed instruction noted that the first sentence was drawn from the dissenting opinion in *Weston v. State*[4] and that the second sentence was drawn from *Walker v. State*.[5]

Jones-Nelson's attorney objected to this instruction, stating, "[I]t's dicta from *Walker* and it's from the dissenting opinion in *Weston*. So . . . I think it's an inaccurate or incorrect statement of the law. It's not necessary. It's not a pattern instruction . . . ."

---

[4]    682 P.2d 1119, 1124 (Alaska 1984) (Compton, J., dissenting).

[5]    887 P.2d 971, 978 (Alaska App. 1994).

In response, the prosecutor disagreed and explained the reason for his request,

> Counsel hasn't articulated how it's incorrect. It is dicta from *Weston* but it is a direct quote from what Judge Mannheimer wrote in *Walker*. It is not an incorrect statement of the law, and it should be given, particularly in a case here where one of the themes is excessive force and *shooting an unarmed man in the back as he ran away*.

(Emphasis added.) Defense counsel did reply to the prosecutor's argument, but he did not clarify his objection or offer any explanation about why the instruction was legally incorrect. Defense counsel simply replied that the instruction may have come from an Arizona case. The trial judge overruled the objection, observing that he had given the instruction before, and gave the instruction to the jury.

## B.    Jones-Nelson Did Not Preserve These Issues For Appeal.

Alaska Criminal Rule 30(a) requires counsel to make a specific objection to preserve a dispute over a jury instruction: "No party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which the party objects and the grounds of the objections*."[6] We have construed this language to require counsel to state the specific legal grounds for such an objection:

> The purpose of this rule is to enable the trial judge to avoid error by affording him an opportunity to correct his charge before it goes to the jury. The dictates of the rule are satisfied only if the judge is clearly made aware of the alleged error in or omission from the instructions. Counsel's objections must

---

[6]    Alaska R. Cr. P. 30(a) (emphasis added). Alaska Civil Rule 51(a) contains nearly identical language.

be specific enough to clearly bring into focus the precise nature of the asserted error.[7]

For example, in *Alyeska Pipeline Service Co. v. Aurora Air Service, Inc.*, the appellant made only a general objection to the instructions on tortious interference with contract.[8] We concluded that a general objection that did not state specific legal grounds was insufficient to preserve any issue for appeal.[9] In *Roderer v. Dash*, the appellant made a similar general objection to an instruction recognizing that a physician is required to maintain treatment records, stating, "[J]ust for the record, I object to the whole instruction."[10] We declined to review the instruction because of the lack of a specific objection.[11]

Similarly in this case, Jones-Nelson made only a general objection to the instruction, stating, "I think it's an inaccurate or incorrect statement of the law." Under our case law, this objection was insufficient to preserve these issues for appeal.

The court's opinion relies on two other parts of Jones-Nelson's objection, but neither part would be sufficient to alert the superior court to any specific error.[12] The court first relies on counsel's statement that the instruction was "dicta from *Walker* and it's from the dissenting opinion in *Weston*." But many of our jury instructions are drawn

---

[7]     *Saxton v. Harris*, 395 P.2d 71, 73 (Alaska 1964).

[8]     604 P.2d 1090, 1094-95 (Alaska 1979).

[9]     *Id.*; *see also* 9C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2554, at 80-81 (3d ed. 2008) (stating "the case law is quite clear; a general objection stating no grounds is insufficient to satisfy the requirement of Rule 51(c)(1)").

[10]     233 P.3d 1101, 1110 (Alaska 2010).

[11]     *Id.*

[12]     Slip Op. at 8-9.

from case law, so simply repeating the source of the text did not tell the trial judge anything about why the instruction was legally incorrect. And there was likewise nothing in counsel's objection to suggest that the combination of these two statements was misleading. The court of appeals had previously approved a single jury instruction containing the same combination of text from these two cases.[13]

The court's opinion also relies on counsel's statement that the instruction was "not necessary" and "not a pattern instruction."[14] Again, this objection told the superior court nothing about why the instruction was legally incorrect. The Preface to the Alaska Criminal Pattern Jury Instructions makes it clear that the pattern instructions are not legally binding: "These instructions are not submitted for approval to nor adopted by the Alaska Supreme Court. Rather the instructions . . . are offered as a basis for trial judges and practitioners to tailor instructions for a particular case."[15]

The court's opinion quotes *Young v. State* to support the argument that this objection was sufficient.[16] But the quote from *Young* says nothing about pattern instructions; it only refers to the "instructions actually given" by the court.[17] In *Young*, the superior court rejected a jury instruction on eyewitness identification requested by the defendant, concluding that this issue was adequately addressed by the pattern jury instructions regarding the credibility of witnesses generally and the State's burden of

---

[13]    *Wilkerson v. State*, 271 P.3d 471, 474-75 (Alaska App. 2012).

[14]    Slip Op. at 8-9.

[15]    Alaska Court System, Alaska Pattern Jury Instructions – Crim. Preface (2011).

[16]    Slip Op. at 9 (quoting *Young v. State*, 374 P.3d 395, 428 (Alaska 2016)).

[17]    *Young*, 374 P.3d at 428.

proof.[18]  But we held that the pattern instructions were inadequate and that the superior court erred when it failed to give a specific jury instruction on the reliability of eyewitness identifications.[19]  *Young* supports the proposition that it may be insufficient for the trial court to rely on the pattern instructions when additional explanation is needed.  Therefore, Jones-Nelson's argument that Instruction 34 was "not a pattern instruction" did not give the trial court any indication why the instruction was incorrect.

There was nothing in Jones-Nelson's objection that identified a specific legal error as required by court rule.  If this objection is deemed sufficient, then the rule will no longer require a litigant to state the specific grounds supporting an objection.  A trial attorney with a losing case may simply argue that the opponent's proposals are "legally incorrect" or "not pattern instructions" without advising the trial judge about why they are wrong or how they can be fixed.  Then these Easter eggs can be uncovered during appeal to reverse the loss and require a second trial.

There is another reason Jones-Nelson's "objections" were inadequate.  On appeal, an appellant may only rely on the specific reasons for an objection that were raised in the trial court: "the reason for appealing an instruction cannot be 'entirely different' from the objection raised before the trial court."[20]

The court's opinion identifies two portions of Jones-Nelson's objection that are deemed sufficient:  that this instruction was based on a combination of prior case law

---

**18**    *Id*. at 403.

**19**    *Id*. at 428-29.

**20**    *ASRC Energy Servs. Power & Commc'ns, LLC v. Golden Valley Elec. Ass'n, Inc*., 267 P.3d 1151, 1160 (Alaska 2011) (quoting *Van Huff v. Sohio Alaska Petrol. Co.*, 835 P.2d 1181, 1187 (Alaska 1992)); *see also Chilcote v. State*, 471 P.3d 599, 603 (Alaska App. 2020) (declining review of an issue not raised in the trial court).

and that the instruction was not a pattern instruction.[21] But these are not the issues Jones-Nelson raises on appeal. On appeal Jones-Nelson argues that this instruction was improperly retroactive and that there is no limit on the extent of force a person may use to repel a serious attack. There was nothing in Jones-Nelson's objection that would alert the superior court to these issues. Jones-Nelson did not preserve the issues the court's opinion addresses because he did not raise them in a way that could be recognized and addressed by the superior court.

### C. The Instruction Was Not Improperly Retroactive.

The instruction in question addressed the use of deadly force in self-defense, a defense that is governed by statute:

> [A] person who is justified in using nondeadly force in self-defense . . . may use deadly force in self-defense upon another person when and to the extent the person reasonably believes the use of deadly force is necessary for self-defense against
>
> (1) death;
>
> (2) serious physical injury;
>
> (3) kidnapping; [or other serious crimes].[22]

Under this statute, "a defendant must satisfy both an objective and subjective standard; he must have actually believed deadly force was necessary to protect himself, and his belief must be one that a reasonable person would have held under the circumstances."[23]

---

[21] Slip Op. at 8-10.

[22] AS 11.81.335(a).

[23] *Weston v. State*, 682 P.2d 1119, 1121 (Alaska 1984).

Applying the objective standard, the question for the jury is "whether a reasonable person would have acted in self-defense under the circumstances."[24]

In this case, the instructions on self-defense are included in a section of the written instructions describing all of the charges and defenses that applied to Jones-Nelson and his codefendant Parrish Harris. Instructions 17-23 detail the elements of each of the charges the jury was required to consider. Immediately following the elements of the charges, Instructions 24-29 define and explain the terms used in those elements. For example, Instruction 25 explains that "[m]otive is not an element of the crime charged." And Instruction 27 defines the term "intentionally," a term that is used in the elements of first-degree murder in Instruction 17.

The instructions on self-defense follow the same pattern. Instructions 30 and 31 define the elements that justify the use of nondeadly force and deadly force in self-defense. Instruction 32 explains that the term "reasonably believes" that is used in the self-defense instructions "refers to the reasonable belief of a sober person." Instruction 33 explains which charges the self-defense instructions apply to. And Instruction 34 returns to an explanation of reasonableness, beginning with the explanation that "use of deadly force is unreasonable, if non-deadly force is obviously sufficient to avert the threatened harm."

The court's opinion adopts the court of appeals' conclusion that Instruction 34 is improperly retroactive.[25] But there is no basis for this conclusion in the text of this instruction. This instruction applies the same temporal perspective as all of the other instructions on the charges and defenses. Each of these instructions is phrased in the present tense, requiring the jury to apply the stated legal standards to the defendant's

---

[24] *Id.*

[25] Slip Op. at 12-13.

-34-                                                    7599

mental state, conduct, and the other circumstances of the charged offense. For example, Instruction 30 advises the jury that "[a] person is justified in using nondeadly force upon another when and to the extent the person reasonably believes it is necessary for self-defense." Telling the jury that "use of deadly force is unreasonable, if non-deadly force is obviously sufficient" merely requires the jury to apply the same approach to a slightly different legal requirement. There is nothing in the wording of this instruction that suggests that the jury should apply this instruction to anything other than the circumstances as they existed at the time of the charged offenses. And since a self-defense claim must be both sincere and reasonable it was no error for the instructions to clarify those requirements separately.

Our focus should be on "whether the instructions given, when read as a whole, adequately inform the jury of the relevant law."[26] Here, the instructions made it clear that the reasonableness of the defendant's reaction to a threat must be judged from his perspective. Instruction 30 states, "A person is justified in using nondeadly force upon another when and to the extent *the person reasonably believes* it is necessary for self-defense against what *the person reasonably believes* to be the use of unlawful force by the other person . . . ." (Emphasis added.) Instruction 31 allows the use of deadly force "when *the person reasonably believes* the use of deadly force is necessary for self-defense." (Emphasis added.) Instruction 32 explains the term "reasonably believes" as used in these previous instructions. And Instruction 34 begins with a sentence describing when the use of deadly force is "unreasonable." Anyone hearing or reading these instructions one after another would understand that Instruction 34 (just like Instruction 32) is an explanation of the requirement of reasonableness stated in Instructions 30 and

---

[26] *Gov't Emps. Ins. Co. v. Gonzalez*, 403 P.3d 1153, 1161 n.22 (Alaska 2017) (quoting *City of Hooper Bay v. Bunyan*, 359 P.3d 972, 978 (Alaska 2015)).

I agree with the court of appeals' conclusion that the proper perspective is clear from these instructions when they are read as a whole.[27]

### D. The Self-Defense Statute Places A Reasonable Limit On The Justifiable Extent Of Deadly Force.

"Statutory interpretation . . . begins with the plain meaning of the statute's text."[28] We presume that "the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous."[29] In this case, the self-defense statutes were part of a set of justification provisions enacted in a comprehensive revision of the criminal code in 1978.[30] We should therefore construe the terms used in these statutes together.[31]

These justification statutes refer to the use of "force," which includes both "deadly and non-deadly force."[32] There is a broad range of severity for either type of force. At a minimum, "force" includes "any bodily impact, restraint, or confinement or

---

[27] *Jones-Nelson v. State*, 446 P.3d 797, 803-04 (Alaska App. 2019) (concluding that "when the supplemental instruction is read in conjunction with the other jury instructions on self-defense, and in the context of the parties' closing arguments at Jones-Nelson's trial, there is little chance that the jurors would have been misled on this issue").

[28] *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 98 (Alaska 2012).

[29] *Nelson v. Mun. of Anchorage*, 267 P.3d 636, 642 (Alaska 2011) (quoting *Mech. Contractors of Alaska, Inc. v. State, Dep't of Pub. Safety*, 91 P.3d 240, 248 (Alaska 2004)).

[30] *See* ch. 166, § 10, SLA 1978.

[31] *Bullock v. State, Dep't of Cmty. & Reg'l Affs.*, 19 P.3d 1209, 1214-15 (Alaska 2001) (stating that we construe "statutes in pari materia where two statutes were enacted at the same time, or deal with the same subject matter" (quoting *Underwater Constr., Inc. v. Shirley*, 884 P.2d 150, 155 (Alaska 1994))).

[32] AS 11.81.900(b)(28).

the threat of any bodily impact, restraint, or confinement."[33]  And "deadly force" is likewise defined quite broadly:

> "[D]eadly force" means force that the person uses with the intent of causing, or uses under circumstances that the person knows create a substantial risk of causing, death or serious physical injury; "deadly force" includes intentionally discharging or pointing a firearm in the direction of another person or in the direction in which another person is believed to be and intentionally placing another person in fear of imminent serious physical injury by means of a dangerous instrument[.][34]

So "deadly force" is not necessarily lethal.  Intentionally pointing a gun at someone or intentionally threatening to shoot someone are both examples of "deadly force," even if no shots are fired.[35]

The broad extent of these definitions undercuts the court's assumption that there can be no varying degrees of force.  As we have recognized previously, "Even someone lawfully refusing to retreat cannot meet a light push or grab with a knockout

---

[33]  *Id.*

[34]  AS 11.81.900(b)(16).

[35]  The court's opinion misinterprets the commentary that applies to the 1980 amendment to this statutory definition. Slip Op. at 16 n.55.  The commentary explains that when the legislature adopted AS 11.81.370 in 1978 (ch. 166, § 10, SLA 1978), "the legislature concluded that only peace officers making an arrest should have the authority to threaten deadly force in situations where the actual use of deadly force was not justified."  Comment. & Sectional Analysis on the Amendments to Alaska's Revised Crim. Code, S. Journal Supp. No. 44 at 20, 1980 S. Journal (May 29, 1980).  Although AS 11.81.370 thus implied that "nondeadly force does not include a threat of deadly force," the 1980 legislature decided to amend the statute to clarify that the definition of "deadly force" includes these threats.  *Id.*  In any event, it is the current version of this definition that applies to the justification statutes that we interpret in this case.

blow."[36]  And this also holds true for deadly force; the consequences of holding a wrongdoer at gunpoint are much less serious than shooting him until he is dead.

The justification statutes allow a person to use force in a variety of situations: in self-defense,[37] to defend another person,[38] in defense of property,[39] in making an arrest,[40] or to prevent an escape.[41]  Parents may use force to promote the welfare of a child;[42] a schoolteacher or a bus driver may use force to maintain order.[43] But there is a similar limit on every justifiable use of force:  a person may use force only "when and to the extent the person reasonably believes" the use of force is "necessary."[44]

The Alaska Criminal Code Revision Subcommission recommended this language in part to correct a problem with the former justifiable homicide statute.  Before the code revision, this statute appeared to justify any homicide committed to prevent a felony or to arrest a felony suspect.[45]  We had noted that "[t]his statute on its face seems

---

[36]    *Dennis Q. v. Monika M.*, No. S-15084, 2014 WL 1888270, at *6 (Alaska May 7, 2014).

[37]    AS 11.81.330-.335.

[38]    AS 11.81.340.

[39]    AS 11.81.350.

[40]    AS 11.81.370-.390.

[41]    *Id*.

[42]    AS 11.81.430(a)(1).

[43]    AS 11.81.430(a)(2).

[44]    AS 11.81.330-.400; *see also* AS 11.81.430(a) (authorizing force in specific circumstances "[w]hen and to the extent reasonably necessary and appropriate").

[45]    Former AS 11.15.100 (1970) provided:

(continued...)

to eliminate the requirement that the killing be necessary to effect the arrest or to prevent the felony."[46] We therefore adopted the Oregon interpretation of this statute, requiring a finding of necessity before such a killing could be justified.[47] Our decision also recognized the fundamental difficulty with allowing an unlimited right of self-defense:

> The control of man's destructive and aggressive impulses is one of the great unsolved problems of our society. Our rules of law should discourage the unnecessary use of physical force between man and man. Any rule which promotes rather than inhibits violence should be re-examined.[48]

Seven years later, the subcommission adopted this reasoning for its recommendations, noting that "while the existing statute seems to provide an unchecked grant of authority

---

[45] (...continued)
Justifiable homicide. The killing of a human being is justifiable when committed by any person

(1) to prevent the commission of a felony upon him, or upon his husband, wife, parent, child, master, mistress, or servant;

(2) to prevent the commission of a felony upon his property, or upon property in his possession, or upon or in a dwelling house where he may be;

(3) in the attempt, by lawful means, to arrest a person who has committed a felony, or in the lawful attempt to suppress a riot or preserve the peace.

[46] *Gray v. State*, 463 P.2d 897, 908 n.16 (Alaska 1970).

[47] *Id.*

[48] *Id.* at 909 (quoting *Miller v. State*, 462 P.2d 421, 426 (Alaska 1969)).

to use deadly physical force in self-defense, that authority is significantly limited by the implied requirement of 'necessity' found by the Supreme Court."[49]

The subcommission also noted that the justifiable homicide statute "might lead a person to believe that he may kill another to prevent the commission of any felony upon his property."[50] The subcommission therefore recommended the legislature limit the use of deadly force in property defense to the most dangerous property crimes: arson or burglary of an occupied building.[51] But even in those circumstances the subcommission maintained "the requirement that the force is 'reasonably believed necessary' to accomplish the prevention or termination" of the crime.[52]

Despite these explanations, the court's opinion concludes that the subcommission was recommending that there should be no limit on the degree of force a person can use to respond to one of the statutory threats.[53] But this is a misreading of this commentary; overall the subcommission recommended a consistent requirement that the extent of the force must be necessary. For example, the subcommission concluded its introduction to this chapter with an emphasis on the necessity requirement:

> Any use of force is justifiable only "when and to the extent [the person claiming the defense] reasonably believes it necessary." Therefore, even though the use of "deadly physical force" may be authorized in a particular section, it is not justified if the person claiming the defense believed at

---

[49] Alaska Criminal Code Revision Part II, at 50 (Tentative Draft 1977), [hereinafter Tentative Draft].

[50] *Id.* at 54.

[51] *Id.* at 56-57.

[52] *Id.* at 57.

[53] Slip Op. at 13-19.

that time that he could accomplish his purpose by the use of non-deadly force.[54]

The court's opinion concludes that this language "suggests a split between deadly and nondeadly force, rather than a spectrum of degrees of deadly force."[55] But this reading unnecessarily eliminates the subcommission's recommendation that the use of any force (including deadly physical force) is justifiable only "to the extent" the force is necessary.[56]

A better reading of this quoted text preserves all of the language of the subcommission's proposal. The first sentence states the general rule that limits the extent of *any* use of force (even deadly force), and the second sentence states an example showing when the use of excessive force is obviously unjustified. Just as the jury was instructed in this case, the "use of deadly force is unreasonable, if non-deadly force is obviously sufficient to avert the threatened harm."

The subcommission also specifically discussed "to what degree a person is justified in using physical force against another in self-defense."[57]

> Subsection (a) allows a person to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force. Subject to the limitations on the use of deadly physical force, he may exercise that degree of force which he reasonably believes to be necessary.[58]

---

[54] Tentative Draft, at 48 (alteration in original).

[55] Slip Op. at 17.

[56] Tentative Draft, at 39.

[57] *Id.* at 51.

[58] *Id.*

Again the court's opinion concludes that the second sentence of this quote eliminates any requirement that the extent of any self-defense must be limited by necessity.[59]

But the second sentence of this quote does not support this construction. The second sentence recognizes two limitations on the use of force in self-defense. The use of force is "subject to the limitations on the use of deadly physical force" which are later explained to include defending against deadly force, a kidnapping, a robbery, or a forcible sexual assault.[60] But the limitation on the extent of justifiable force applies to all self-defense situations: the defendant may exercise only "that degree of force which he reasonably believes to be necessary."

We may consider legislative history to construe a statute, but "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[61] Here there is nothing in the revision subcommission's draft or its commentary that is inconsistent with the comprehensive statutory requirement that, to be justified, force must be no greater than the extent reasonably necessary to respond to a threat.

As noted above, the subcommission's recommendation for a reasonable necessity requirement was eventually included in each section of the justification statutes. So it may help to consider how this requirement works in various scenarios. For example, one section allows a peace officer to use deadly force to make an arrest of

---

[59]    Slip Op. at 16-17.

[60]    Tentative Draft, at 52.

[61]    *State, Dep't of Com., Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 597 (Alaska 2011) (quoting *Gov't Emps. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 284 (Alaska 2005)).

a person who has committed a felony involving the use of force.[62]  Suppose that an officer is able to catch and subdue such a suspect by using a chokehold.  Can the officer continue to strangle the suspect until his heart stops beating?  The answer is no because the officer may use deadly force "only when and to the extent the officer reasonably believes the use of deadly force is necessary to make the arrest."[63]

The court's opinion appears to agree that the duration of the officer's chokehold is limited by the language that allows the use of deadly force only "when necessary."[64]  This interpretation gives vitality to the first limitation required by the statute.

But there is a second important limitation in the statute: the officer may use deadly force only "to the extent the officer reasonably believes the use of deadly force is necessary."[65]  Since there is no statutory definition of the word "extent," it must be construed "according to [its] common and approved usage."[66]  At the time of this legislation, the word "extent" was defined as "[a]mount; scope; range; magnitude."[67]  This second limitation therefore requires that the officer must reasonably believe that the amount or magnitude of the force he uses is necessary to make the arrest.

---

[62]    AS 11.81.370(a)(1).

[63]    AS 11.81.370(a).  This limitation is consistent with a statute, first enacted in 1962, ch. 34, § 2.08, SLA 1962, providing that "[a] peace officer or private person may not subject a person arrested to greater restraint than is necessary and proper for the arrest and detention of the person."  AS 12.25.070.

[64]    Slip Op. at 15.

[65]    AS 11.81.370(a).

[66]    AS 01.10.040(a).

[67]    *Extent*, Black's Law Dictionary (5th ed. 1979).

The court's opinion interprets this second limitation to be only "temporal" — deadly force is not justified after the necessity has ended.[68] But there is nothing in the text of the statute, the legislative history, or the common usage of this term to suggest such a narrow definition. And the court's interpretation makes the limitation on the "extent" of the force into a limit on the timing and duration of the force — the same limitation as the language requiring the force to be used only "when" necessary. The court's interpretation thus violates the presumption that "the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous."[69]

We can modify the forgoing example to isolate the importance of this second limitation on the amount or magnitude of justifiable force. As noted, a peace office may use deadly force to make an arrest of a person who has committed a felony involving the use of force against a person.[70] Suppose that the officer believes that he can restrain a fleeing suspect using a minimal amount of deadly force: he must draw his service revolver and shout, "Stop or I will shoot!" Instead of restraining the suspect, can the officer simply shoot the suspect in the back without a warning? The answer is no because the officer may use deadly force "only . . . to the extent the officer reasonably believes the use of deadly force is necessary to make the arrest."[71]

---

[68] Slip Op. at 15 n.52.

[69] *Nelson v. Mun. of Anchorage*, 267 P.3d 636, 642 (Alaska 2011) (quoting *Mech. Contractors of Alaska, Inc. v. State, Dep't of Pub. Safety*, 91 P.3d 240, 248 (Alaska 2004)).

[70] AS 11.81.370(a)(1).

[71] AS 11.81.370(a).

Another section of the justification statutes allows a parent or guardian to use force to promote the welfare of a child.[72] Suppose a parent decides to give a child a spanking as punishment for misconduct. Can the parent give the child a violent beating? The answer is no because the parent may use force only "[w]hen and to the extent reasonably necessary and appropriate to promote the welfare of the child."[73]

The text of this child welfare section is slightly different than the other justification statutes, but the same reasoning applies. The justification statutes limit both the timing and the magnitude of justifiable force. Just as the magnitude of a parent's discipline is limited "to the extent necessary and appropriate," the magnitude of deadly force is limited to the extent necessary to make an arrest or to repel an attack.

The court of appeals has interpreted the self-defense statutes consistently with the statutory limitations on the extent of justifiable force. One example is a case where the court of appeals used the language that became the second sentence of Instruction No. 34. In *State v. Walker,* a defendant was charged with assault for stabbing two men with a knife during a fight that broke out at a party.[74] At trial, Walker claimed self-defense.[75] He was convicted of stabbing one man three times in the back, but acquitted of stabbing another man a single time in the arm.[76] The superior court granted Walker's motion for a new trial, reasoning that these two verdicts were

---

[72]     AS 11.81.430(a)(1).

[73]     *Id.*

[74]     887 P.2d 971, 976 (Alaska App. 1994).

[75]     *Id.*

[76]     *Id.*

inconsistent, since both victims were involved with Walker in the same brief melee.[77] But the court of appeals reversed.

The court of appeals recognized that the common law allowed force in self-defense only "to the extent necessary" to respond to the danger, the same limitation expressed in the Alaska justification statutes.[78] The court concluded that Walker's jury may have reasoned that the circumstances required Walker to stab one man in the arm, but that stabbing the other man three times in the back "was not necessary and was therefore not legally justified."[79] The court explained its decision with the same language that the superior court used for the instruction in this case: "even in circumstances when a person is permitted to use deadly force in self-defense . . . that person may still not be authorized to employ all-out deadly force because such extreme force is not necessary to avert the danger."[80]

The *Walker* decision demonstrates the need for a proportionality instruction in a case like this one. If the jury chose to believe Jones-Nelson, then it may have concluded that his initial shot was justified. But the jury could also conclude that it was unnecessary for Jones-Nelson to shoot Jordan four times in the back as he was running away.

---

[77] *Id*. at 976-77.

[78] *Id*. at 978 (citing 2 PAUL H. ROBINSON, CRIMINAL LAW DEFENSES § 131(c), at 77 (1984)).

[79] *Id*.

[80] *Id.* The court's opinion suggests that this result was required by the timing of the attacks on Walker's two victims. Slip Op. at 15. But the court of appeals did not specify which victim was stabbed first, and the trial judge indicated the stabbings all happened "in the space of approximately one second." *Walker*, 887 P.2d at 977. The court of appeals reasoned that the jury may have returned different verdicts based on the relative "severity" of the two attacks. *Id.* at 978.

The recent decision in *Ledbetter v. State* shows another example of this proportionality requirement.[81] Ledbetter testified that he stabbed another man during a fight when the man began to strangle him, and that "he deliberately chose to stab [the man] in the leg, rather than another part of the body, because he 'wanted to make [him] let go' but 'didn't want to kill the guy.' "[82] In response, the prosecutor argued that Ledbetter's intentions were irrelevant because Ledbetter's asserted "right to stab" was the same as a "right to kill."[83] The court of appeals reversed Ledbetter's conviction based on this statement and other misleading arguments, noting that in Alaska, "the person's use of force must be proportionate to the perceived danger."[84]

In summary, when the legislature adopted the justification statutes, it included in every section the revision subcommission's recommendation that justifiable force is limited to the extent necessary to respond to dangerous circumstances. The subcommission included this language in part to incorporate our decision that the common law required that a killing must be necessary before a homicide can be justifiable. Subsequent decisions have promoted this goal by consistently applying the statutory language that requires the use of force to be proportionate to the perceived danger. We should continue to recognize this limitation to follow the legislature's intent and to mitigate the harsh consequences of an unlimited right of self-defense.

---

[81] 482 P.3d 1033 (Alaska App. 2021).

[82] *Id*. at 1035-36.

[83] *Id.* at 1036.

[84] *Id.* This court has likewise recognized that "domestic violence self-defense claims are 'subject to the necessity and proportionality requirements that apply to all other self-defense claims involving non-deadly force.' " *See Sarah D. v. John D.*, 352 P.3d 419, 432 n.50 (Alaska 2015) (quoting *Dennis Q. v. Monika M.*, No. S-15084, 2014 WL 1888270, at *6 (Alaska May 7, 2014)).